IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NATIONAL SOLID WASTES | § | |
| MANAGEMENT ASSOCIATION, | § | |
| BLUEBONNET WASTE CONTROL, INC., | § | |
| IESI TX CORPORATION, REPUBLIC | § | |
| WASTE SERVICES OF TEXAS, LTD, | § | |
| ALLIED WASTE SYSTEM, INC., | § | |
| CAMELOT LANDFILL TX, LP, WASTE | § | |
| MANAGEMENT OF TEXAS, INC., WM | § | |
| RECYCLE AMERICA, LLC, AND | § | CIVIL ACTION NO. |
| BUSINESSES AGAINST FLOW | § | |
| CONTROL, | § | _____ |
|    Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| THE CITY OF DALLAS, MIKE | § | |
| RAWLINGS, PAULINE MEDRANO, | § | |
| TENNELL ATKINS, DWAINE | § | |
| CARAWAY, MONICA ALONZO, | § | |
| CAROLYN DAVIS, JERRY ALLEN, | § | |
| LINDA KOOP, AND ANGELA HUNT, | § | |
|    Defendants. | § | |

## COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

   Plaintiff National Solid Wastes Management Association (the "Association"),

together with Plaintiffs Bluebonnet Waste Control, Inc., IESI TX Corporation, Republic

Waste Services of Texas, Ltd., Allied Waste Systems, Inc., Camelot Landfill, TX, LP,

Waste Management of Texas, Inc., WM Recycle America, LLC, and Businesses Against

Flow Control ("Plaintiffs") complain as follows about recent action taken by the

Defendant City of Dallas ("the City"):

<u>NATURE OF THE ACTION</u>

1.      Some of the Plaintiffs generate or produce solid waste and recyclables in the City ("Generators").  Some of the Plaintiffs collect, transport, and dispose of solid waste or recyclables generated in the City ("Franchisees").  Some of the Plaintiffs operate landfills or recycling facilities that receive solid waste and recycling materials generated in the City ("Owners/Operators").  Through this action they challenge under 42 U.S.C. § 1983, the anti-trust laws of the United States, and supplemental state claims a recently adopted City ordinance that is currently severely affecting their business operations and, if enforced, will permanently damage those business operations.

2.      On September 28, 2011, the Dallas City Council by a 9 to 6 vote adopted a controversial ordinance that will require all solid waste generated, found, or collected inside the City to be disposed of at the City's McCommas Bluff Landfill located in south Dallas.  The ordinance becomes effective January 2, 2012.

3.      If this "flow control" ordinance takes effect, it will:

(a)     preclude Franchisees from collecting and transporting recyclable materials generated by commercial businesses in the City to recycling facilities;

(b)     prevent Owners/Operators that currently process Dallas-generated recyclables from doing so and effectively halt recycling in the City;

(c)     eliminate the decades-old highly competitive private marketplace for commercial waste disposal and eliminate the rights of Franchisees, under their franchise agreements, to dispose of such waste at duly permitted landfills that they and others own and operate;

(d)     on average substantially increase the cost to the Generators for waste disposal in the City; and

(e)     require Franchisees to significantly change their prices, routes, and services.

4.     The ordinance will inflict all of these harms for a single purpose – to increase general revenue for the City and to subsidize unrelated private commercial development. The forced diversion of all commercial solid waste to the City-owned landfill is not only an extraordinarily anti-free-enterprise action by the City, it is unlawful on multiple grounds. It violates the City's franchise agreements. It is unconstitutional. It is contrary to Texas statutes. On these and other grounds, enforcement of the ordinance should be enjoined, immediately and permanently.

<u>JURISDICTION AND VENUE</u>

5.     The Court has jurisdiction over this suit under 28 U.S.C. §§ 1331 and 1343(a)(3) because the Plaintiffs assert, under 42 U.S.C. § 1983, claims based on the United States Constitution, assert anti-trust claims under 15 U.S.C. § 2, and seek a declaratory judgment pursuant to 28 U.S.C. § 2201. The Court has supplemental jurisdiction over the state-law claims under 28 U.S.C § 1367 as they so relate to the federal-question claims that they form part of the same case or controversy.

6.     Venue is proper in this district under 28 U.S.C. § 1391(b)(1)-(2) as the City resides in this district and a substantial part of the events or omissions giving rise to the claims occurred in this district.

<u>PARTIES</u>

7.     Plaintiff the Association is a not-for-profit national trade association for the solid waste and recycling industry, with more than 350 members that operate in all fifty states, including Texas. The Association's members in Dallas include waste

haulers who are Franchisees and the owners of landfills, transfer stations, recycling centers, and other solid waste management facilities who are Owners/Operators, all of whom rely heavily on the free flow of solid waste and recyclables in and across cities, counties, and states to operate their businesses, and all of whom will be harmed by the ordinance.

8.      Plaintiff Bluebonnet Waste Control, Inc. is a Texas corporation that provides solid waste collection service in the City pursuant to a franchise agreement with the City, effective when the ordinance setting forth the franchise agreement was passed by the City Council.  That franchise agreement provides for an initial twenty (20) year term.  Bluebonnet Waste Control, Inc. also operates a recycling facility in the City that receives recyclable materials from within and without the City.

9.      Plaintiff IESI TX Corporation is a Texas corporation that provides solid waste collection services in the City pursuant to a franchise agreement with the City, effective on March 28, 2007, when the ordinance setting forth the franchise agreement was passed by the City Council.  That franchise agreement provides for an initial twenty (20) year term.

10.     Plaintiff Republic Waste Services of Texas Ltd. ("Republic Texas") is a Texas limited partnership.  Plaintiff Allied Waste Systems, Inc. ("Allied"), which does business under various assumed names, including "Allied Waste Services," is a Delaware corporation and an affiliate of Republic Texas.  Republic Texas, Allied, and their affiliates provide solid waste collection service for waste generated within the City pursuant to franchise agreements with the City, effective March 28, 2007, when the

ordinances setting forth the franchise agreements were passed by the City Council. Each franchise agreement provides for an initial twenty (20) year term.  Republic Texas and Allied are "Franchisees."

11.     Plaintiff Camelot Landfill TX, LP ("Camelot") is a Delaware limited partnership, an affiliate of Republic Texas and Allied, and operates a landfill in Lewisville, Texas.  The solid waste collection service provided by Republic Texas and Allied to Dallas customers, pursuant to their franchise agreements, includes disposal at the Camelot landfill and at other landfills operated by Republic Texas and affiliates in Arlington, Itasca, Lewisville, and Ellis County, Texas.  Republic Texas and Allied also provide recyclable materials collection and transportation for Dallas customers; they deliver this material to area recycling facilities, including facilities operated by Allied in Dallas and Plano.  These Allied materials recycling facilities also receive recyclable materials collected by other haulers from Dallas customers.  Republic Texas, Allied, and Camelot are "Owner/Operators."

12.     Plaintiff Waste Management of Texas, Inc. ("Waste Management") is a Texas corporation.  Waste Management provides solid waste and recyclable materials collection and transportation to commercial customers located within the City pursuant to a franchise agreement with the City that took effect March 28, 2007, when the ordinance setting forth the franchise agreement was passed by the City Council.  Waste Management's franchise agreement provides for an initial twenty (20) year term.

13.     Waste Management also owns and operates two landfills in the metroplex area, the DFW landfill located in Lewisville, Texas, and the Skyline landfill located in

Ferris, Texas.  (Collectively the landfills identified in this paragraph may be referred to as the "Waste Management Landfills").  Both of these Waste Management Landfills together accept approximately 460,000 tons of commercial waste generated within the City annually.  Other Franchisees, including some of the other plaintiffs in this case, dispose of commercial waste generated in the City at the Waste Management Landfills.

14.     Waste Management also owns and operates a materials recovery facility ("MRF") within the City at 5025 Cash Road, Dallas, Texas ("WM Dallas MRF").  The WM Dallas MRF accepts, processes, and markets recyclable materials that are generated by businesses located within and without the City and transported to its facility by Franchisees and others.  A significant amount of the volume of recyclable materials accepted at the WM Dallas MRF is generated by commercial businesses within the City.

15.     WM Recycle America, LLC ("WMRA") is a Delaware corporation, and owns and operates a MRF located in Arlington, Texas.  WMRA's Arlington MRF also receives, processes, and sells recyclable materials that are generated within the City.

16.     Plaintiff Businesses Against Flow Control is an unincorporated association created pursuant to Chapter 252 of the Texas Business Organizations Code that includes Generators, Franchisees, and Owners/Operators doing business in the City who will be harmed by the ordinance.

17.     Plaintiffs Waste Management of Texas, Inc., Republic Waste Services of Texas, Ltd., Bluebonnet Waste Control, Inc., and IESI TX Corporation will be referred to collectively as "Franchisees" in connection with their solid waste collection services. Plaintiffs Waste Management of Texas, Inc., Republic Waste Services of Texas, Ltd.,

Bluebonnet Waste Control, Inc., and WM Recycle America, LLC will be referred to as "Owners/Operators" in connection with their landfill or recycling operations.

18.     The City is a home rule city in the State of Texas.  It may be served through its City Secretary, Rosa A. Rios whose address is Dallas City Hall, 1500 Marilla Street, Room 5D South, Dallas, Texas 75201-6390.

19.     Defendant Mike Rawlings is the Mayor of the City and is sued solely in his official capacity in connection with Count 6.  He can be served at Dallas City Hall, 1500 Marilla Street, Room 5EN, Dallas, Texas 75201.

20.     Defendants Pauline Medrano, Tennell Atkins, Dwaine Caraway, Monica Alonzo, Carolyn Davis, Jerry Allen, Linda Koop, and Angela Hunt are members of the City Council and are sued solely in their official capacity in connection with Count 6. They can be served at Dallas City Hall, 1500 Marilla Street, Room 5FS or 5FN, Dallas, Texas 75201.

21.     Pursuant to 37.006(b) of the Texas Civil Practice and Remedies Code, the Texas Attorney General, Greg Abbott, is to be served a copy of this complaint.  He can be served at the office of the Attorney General, 300 W. 15th Street, Austin, Texas 78701.

<u>BACKGROUND FACTS</u>

22.     For decades, the collection, transportation, recycling, and disposal of solid waste produced or generated in the City by commercial and industrial businesses has been handled almost exclusively by private companies.  Each of those companies is required to enter into a franchise agreement with the City, which allows the Franchisees to use the public roads in exchange for paying the City a 4% fee on all gross receipts.

Currently, approximately 180 private companies have entered into such franchise agreements, which are adopted as ordinances, and most of those agreements are valid for the next 15 years or more. The franchise agreements grant each Franchisee non-exclusive rights to operate and maintain a "Solid Waste Collection Service," defined in the Dallas City Code to include "removing wet or dry solid waste from any premises, or transporting, processing, or disposing of wet or dry solid waste." The franchise agreements place no limitation on where solid waste collected in the City may be disposed of. The Franchisees service approximately 16,000 commercial and industrial businesses within the City under private contracts. Over 50% of the solid waste and recyclables produced or generated by commercial businesses in the City are disposed of at non-City landfills or recycled at facilities legally permitted by or registered with the State of Texas and operating both inside and outside of the corporate limits of the City.

23.     Over the last several years the City has been forced to make budget cuts because revenues from taxes and fees have dropped as a result of the economic difficulties experienced nationally and locally. The City has explored a variety of creative ways to increase its revenues to overcome the shortfalls. Most recently, the City determined that by requiring all commercial solid waste generated, found, or collected inside the City be disposed at the City landfill – McCommas Bluff Landfill – the City could generate increased revenues from disposal fees. According to the City, the approximately 850,000 to 900,000 tons of solid waste currently disposed of outside the City would produce between $17,000,000 and $18,000,000 in new revenue for the

City each year if that waste were required to be disposed of at the McCommas Bluff Landfill instead.

24.     On September 28, 2011, the Dallas City Council by a 9 to 6 vote adopted an ordinance, a copy of which is attached hereto as Exhibit A. The ordinance makes it a crime for any person, including Franchisees of the City, to dispose of any waste generated, found, or collected inside the City at any location other than a transfer station or landfill owned and operated by the City of Dallas. The effect of the ordinance is to require that all solid waste material, including recyclable materials that contain any incidental waste, which is generated, found, or collected in the City be taken to the City's McCommas Bluff Landfill for disposal.  It prevents the Franchisees from collecting and disposing of solid waste in the most cost-efficient manner dictated by the market.  It requires the Franchisees to maintain financial and business records of all solid waste collection and disposal transactions in eight counties of North Texas.  None of these changes resulted after notice and a hearing required by the City Charter and the ordinance granting each franchise.

25.     The City staff's public justification for the ordinance was a claim that "trash" should no longer be treated as a public nuisance but instead as "treasure." According to briefings provided by the staff to the City Council, the ordinance would allow the City to generate new revenue not only from disposal fees but also from the sale both of materials reclaimed from solid waste and of various forms of energy produced from solid waste.

26.     The briefings and public discussions leading up to adoption of the ordinance did not identify even one problem associated with the decades old method of collection, transportation, and disposal of commercial solid waste in the City nor any problem with processing of recyclable materials.  Likewise, neither the City nor anyone else involved in the process suggested any need for the City to regulate the collection and disposal of solid waste or the processing of recyclable materials more stringently than provided for in the state regulatory scheme that has replaced local control of such collection and disposal and ensures appropriate and safe handling of solid waste.  To the contrary, internal e-mails among City staff, City presentations, and public statements by the mayor made it clear that the ordinance had everything to do with increasing revenues to the City and nothing to do with any problems, inefficiencies, health and safety issues, or defects in the current arrangements for solid waste collection or disposal or processing of recyclable materials in the City.

27.     The claim by the City staff that enforcement of the ordinance will allow the City to turn "trash into treasure" is demonstrably not factual.  The City neither owns nor operates any facilities that (i) process recyclable materials, (ii) reclaim for resale material from solid waste, or (iii) transform solid waste into a liquid fuel.  The City likewise has no current plans to proceed with acquiring and building the infrastructure that would be necessary to engage in such activities.  Even if it did, the City could not do so at any of its existing facilities without substantial changes to the zoning laws that govern those activities. Finally, the City is already receiving today at the McCommas Bluff Landfill more solid waste than could be handled by any

processing facility in the world that has the capability of transforming "trash into treasure."  Given that the City has no current or reasonably foreseeable future capacity to turn trash into treasure, even assuming such a transformation is practicable or technologically available, the City's own estimates demonstrate that requiring all trash generated, found, or collected in the City to be sent to the McCommas Bluff Landfill would actually reduce the landfill's useful life by nine to 15 years, thereby creating a new solid-waste disposal problem rather than solving one.

28.    The ordinance would also prohibit the recycling efforts of the Franchisees and their customers, efforts that have successfully diverted hundreds of thousands of tons of materials that would otherwise have ended up in a landfill.  The City has never before imposed such a restriction on commercial businesses, and doing so now retards rather than advances the recycling encouraged not just by state law but by every responsible authority on the handling of solid wastes.   The ordinance would likewise thwart the efforts of both commercial businesses and Franchisees to pursue and achieve their "sustainability" goals related to recycling, by requiring that any recyclable loads containing solid waste - even de minimis amounts - be disposed of at the McCommas Bluff Landfill instead of being recycled.

29.    In short, the ordinance is not even arguably aimed at protecting public health, safety, or welfare related to uncollected or improperly disposed of solid wastes. Nor will it result in more solid waste being converted to renewable materials or green energy, and it thwarts the efforts of recyclers by requiring the landfilling of recyclable materials.  Its sole and avowed purpose is to generate revenue for the City by imposing

new fees on Generators and the Franchisees and taking fees from Owners/Operators (when commercial waste and recyclable materials are disposed of or processed at Owners/Operators' facilities) and diverting those fees to the City to address revenue shortfalls from other sources.

30.     In the words of the Mayor of the City, Mike Rawlings, to the City Council, immediately prior to calling for the vote to pass the ordinance:  "This is a business revenue issue," referring to what he said was $15-18 million in revenue from 700,000 to 900,000 tons of commercial waste that is leaving the City of Dallas and "corporations outside of Dallas are making money off of [it]."  According to Mayor Rawlings, the flow control ordinance is about one thing "who deserves that revenue.  Should it be the owners of the landfills outside the city, or should it be the taxpayers.  That's the fundamental issue.  I'm going to vote for the taxpayers.  I believe we – everybody in this room that lives in Dallas, if you have a business in Dallas, deserves that and not a private enterprise."   But to divert the revenue in question, the ordinance straightforwardly denies and expropriates rights that the City granted to each Franchisee, for terms that continue many years into the future, on which basis the Franchisees have committed substantial capital toward equipment and payrolls for their employees.

31.     By the same vote through which it adopted the ordinance, the City also passed a resolution that authorized the establishment of the "Southeast Oak Cliff Investment Fund," which is attached hereto as Exhibit B.  Under the terms of the resolution, 6% of the increased revenue generated by the ordinance will be deposited

into that Fund, in an amount up to one million dollars ($1 million) per year, "to support economic development in the southeast Oak Cliff community."  In combination, the ordinance and the resolution constitute action by the City to retract rights previously granted to the Franchisees, as well as interfering with the property and liberty rights of the Franchisees and the Owners/Operators, and to take the revenues associated with those rights for the benefit of the City, not only for general revenue support, but also to subsidize private commercial development for the benefit of third parties.

32.     The ordinance sets an unrealistic time frame for compliance causing logistical nightmares.  If the ordinance is allowed to take effect, companies that are authorized by the City to engage in collection activities will be required to change their routes, add trucks, add drivers, and rework agreements with thousands of customers. Routes, rates, and services will necessarily be changed because the mix of trucks used, the routes followed, and the rates charged the customer are a direct function of the landfill used for disposal.   Moreover, the McCommas Bluff Landfill does not operate 24-hours-a-day, unlike at least one other landfill that currently accepts solid waste generated in the City.  Furthermore, increased use of the McCommas Bluff Landfill will inevitably cause wait times at that facility to increase, magnifying scheduling and service problems for Franchisees and their commercial customers, many of whom require that collection occur during specific hours of the day and night.   The ordinance's broad and vague wording also denies Franchisees the information they need in order to finalize operational changes.  For example, until they know how the City will interpret the broad and vague terms of the ordinance they cannot order

additional equipment.  With such equipment typically having long lead times for delivery, it is unlikely that new equipment needed for compliance with the ordinance could be available by January 2, 2012, even if the necessary operational changes were understood before that date. An existing shortage of qualified drivers creates further problems with compliance with an ordinance that so fundamentally changes the business model of most of the City's Franchisees.  Realistically, Franchisees would require at least a full year to complete preparations to ensure a smooth and safe transition to comply with the ordinance.

33.    The ordinance makes it a crime for any waste material generated, found, or collected inside the City to be disposed of anywhere other than a facility owned and operated by the City.  It is a defense to prosecution if the load disposed of is "composed solely of recyclable material."   In other words, the ordinance treats all recyclable material mixed with other solid waste – even if only a minimal amount of solid waste - as entirely waste.  That is inconsistent with state law, which recognizes that recyclable materials contain incidental amounts of solid waste.  Neither the ordinance nor any other authoritative statement from the City defines "disposes of," the normal meaning of which is "discarded."   Assuming that meaning, if the ordinance takes effect no reusable goods, metal, plastic, paper, glass, wood, textiles, or scrap automobiles or other recyclable materials could be recycled anywhere other than a facility owned and operated by the City unless the percentage of non-recyclable material collected with any recyclable material is "0."

34.     The City has verbally confirmed in a public meeting that this is how it intends to enforce the ordinance.  It is impossible for a Franchise to ensure that a load of recyclable materials contains no solid waste whatsoever, thus placing the Franchisee in jeopardy of committing a crime if a customer mistakenly leaves trash mixed in with recyclable materials.  And the City has announced that the Franchisees may not take such a mixed load to a non-city-owned facility even for the limited purpose of removing the non-recyclable components in order to process the recyclable components.  As a result, the practical effect of the ordinance is that all recyclable materials must be sent to the McCommas Bluff Landfill.

35.     The ordinance also fails to define "recyclable material."  The Dallas City Council has previously delegated to the director of sanitation the authority to define that term.  She has yet to do so. Without such guidance it is impossible to know what defenses to prosecution exist with respect to the collection and handling of such materials that the Franchisees currently engage in.

36.     The ordinance fails to define what constitutes a load consisting "solely" of recyclable material.  In practice, virtually all recyclable material contains some non-recyclable elements, as Texas law recognizes.  For example, even a source separated load of recyclable material generally contains anywhere from 5% to 35% of non-recyclable material.  The absence of guidance invites arbitrary enforcement, especially given that the City currently sends recyclable materials collected from residences that contain some non-recyclable material to Garland for processing and will be in violation of its own ordinance in the absence of a special waiver.

COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF –– Page 15
518713 000002 DALLAS 2805015.1

37.     Certain of the Plaintiffs currently own and operate materials recovery facilities within and without the City of Dallas that process recyclable materials generated by commercial businesses in Dallas.  This ordinance deprives those facilities of the recyclable materials they need to continue to operate their facilities.

38.     The ordinance will require an immediate and significant change in the Plaintiffs' conduct of their solid waste and recycling activities to avoid criminal prosecution and fines and penalties including possible loss by the Franchisees of their franchises.  At a meeting on Monday, November 14, 2011, the City's director of sanitation bluntly advised Franchisees that a failure to follow the ordinance means "we can pull your franchise if need be," "we can stop the vehicle that is committing the offense and we're prepared to do that, so don't make us do that," and "you get a penalty of not to exceed $2,000.00."   It will also result in higher disposal costs being paid by customers and lower profits for the Franchisees and Owners/Operators, as well as imposing substantial losses on the Owners/Operators.  The harms and injuries faced by Plaintiffs are real and immediate.

<u>COUNT 1</u>

39.     The Plaintiffs reallege paragraphs 1 through 38.

40.     The ordinance substantially impairs the contractual right of the Franchisees to dispose of solid waste and process recyclable materials at an authorized facility of their choice.

41.     The ordinance does not advance any goals that are important and of legitimate public concern under the police power.

42.     Alternatively, if the ordinance does advance such a goal, its impairment of rights provided under the franchises was neither reasonable nor necessary to serve any important and legitimate public concern.

43.     As such, the ordinance violates the "Contracts Clause" of the federal constitution, art. I, § 10 and 42 U.S.C. § 1983 and is void and unenforceable.

## COUNT 2

44.     The Plaintiffs reallege paragraphs 1 through 38.

45.     The ordinance is specifically directed at and directly abrogates the rights of the Franchisees to dispose of solid waste and process recyclable materials at an authorized facility of their choice.

46.     The ordinance does not represent an exercise of the police power as it was enacted to generate revenue rather than to protect the health, safety or welfare of Dallas residents.

47.     As such, the ordinance violates the "Contracts Clause" of the Texas Constitution, art. I, §§ 16 and 29, and is void and unenforceable.

## COUNT 3

48.     The Plaintiffs reallege paragraphs 1 through 38.

49.     The ordinance will substantially impair the Franchisees' rights under their franchise agreements with the City.  The franchises granted by the City to conduct a Solid Waste Collection Service specifically include disposal service, and allow a Franchisee to dispose of solid waste at a location of its choosing.  In denying Plaintiffs the opportunity to dispose of waste received from Dallas customers at lawfully

permitted landfills that they and their affiliates own and operate, the ordinance materially alters the rights granted to the Franchisees, undermines expectations on which they have made substantial investments, and will effectively confiscate a substantial portion of the businesses that they have been authorized to develop and operate under their franchises.

50.     The ordinance will impair Franchisees' rights for the purpose of advancing the City's own economic and proprietary interests, both for general revenue support and to subsidize unrelated commercial development for the benefit of third parties.

51.     Imposing a requirement on a Franchisee to use only city owned and operated facilities to dispose of solid waste and process recyclable material for the purpose of generating additional revenue is not a proper exercise of the police power and violates the due course of law provision of the Texas Constitution, art. I, § 19, and the ordinance is void and unenforceable.

<u>COUNT 4</u>

52.     The Plaintiffs reallege paragraphs 1 through 38.

53.     The ordinance does not address any of the environmental or health or safety concerns historically or currently associated with solid waste in Dallas.  The ordinance does not address any general welfare concerns of Dallas residents.  It is not an exercise of the police power.

54.     The purpose of the ordinance is to raise revenue.  Revenue can only be raised using the City's taxing power.  The City's taxing power does not authorize

directing that all solid waste generated, found or located in the City be disposed of at the McCommas Landfill to raise revenue.

55.     The due process clause of the federal constitution protects citizens, including Plaintiffs, from being subject to an ordinance that the City never had the power to impose in connection with their property or business activities.

56.     Because the City in adopting the ordinance acted without the authority to do so, it has violated the federal due process clause and 42 U.S.C. § 1983 and the ordinance is void and unenforceable.

COUNT 5

57.     The Plaintiffs reallege paragraphs 1 through 38.

58.     The ordinance violates the due process clause of the federal constitution and 42 U.S.C. § 1983 and the due course of laws provision of the Texas Constitution, art. I, § 19, because it fails to provide people of ordinary intelligence the reasonable opportunity to understand what conduct is prohibited and because it authorizes and encourages arbitrary and discriminatory enforcement.   It is therefore void and unenforceable.

COUNT 6

59.     The Plaintiffs reallege paragraphs 1 through 38.

60.     The City's charter and the franchise agreements provide that the franchise agreements cannot be materially adversely amended, and that rates, rules, and regulations cannot be changed without notice and an adjudicatory hearing to determine if the amendment or changes are proper and necessary.

61.     The members of the City Council who approved the ordinance acted in violation of the City's charter and the ordinances granting the franchises by purporting to enact rules and regulations affecting the franchises and amending or changing the franchises without notice or a hearing.

62.     The ordinance should be declared void and unenforceable unless or until the required notice of the proposed amendments is provided and there is a final non-appealable decision, after an appropriate hearing is held to determine if the franchises should be amended.

<u>COUNT 7</u>

63.     The Plaintiffs reallege paragraphs 1 through 38.

64.     The ordinance classifies recyclable material as solid waste.

65.     Sections 361.421(5), 363.006(a)-(b), and 364.003(5) of the Texas Health & Safety Code and 30 Tex. Admin. Code § 330.3(122) specify that recyclable material is not solid waste and is not subject to state laws governing solid waste.  Texas law at 30 Texas Administrative Code § 328.2(3) recognizes that non-recyclable waste can accompany recyclable material despite reasonable efforts to maintain source-separation and that does not convert the recyclable material into solid waste.

66.     By effectively classifying all recyclable material as solid waste, the ordinance is inconsistent with state law.  By requiring that the recyclable material go to only city owned and operated facilities based on its classification as solid waste, the ordinance violates state law.

67.     The state comprehensively regulates the collection, transportation, and disposal of solid waste.   State law does not authorize cities to require that recyclable material be sent only to city owned and operated facilities. The City therefore cannot lawfully impose such a requirement under art. XI, § 5 of the Texas Constitution.

68.     Because the ordinance is inconsistent with state law and is not authorized by state law and violates the Texas Constitution it is void and unenforceable.

<u>COUNT 8</u>

69.     The Plaintiffs reallege paragraphs 1 through 38.

70.     Sections 361.022 of the Texas Health & Safety Code describe the Texas policy of promoting recycling and preferring recycling over resource recovery and landfilling.  The ordinance, by contrast, discourages recycling and effectively requires the landfilling of all recyclable materials that may contain incidental solid waste. It also prohibits the exportation of waste from a local governmental jurisdiction.

71.     Chapter 363 of the Texas Health and Safety Code allows local governments to adopt solid waste management plans consistent with the requirements of that chapter and the rules of the Texas Commission on Environmental Quality.  The City has adopted such a plan, which seeks to minimize and to require the reuse or recycling of, waste and does not prohibit, in fact or by effect, exportation of waste.  The City is a member of the North Central Texas Council of Governments and its plan is consistent with NCTCOG's regional plan, which has been adopted by the Texas Commission on Environmental Quality that provides "materials are reused and recycled whenever possible."

72.    The ordinance is inconsistent with the state's policy promoting recycling, the City's local solid waste management plan, and the NCTCOG's regional plan and, therefore, would violate section 363.066 of the Texas Health and Safety Code, which mandates that actions of the City be consistent with its and the regional plan, making the ordinance void and unenforceable under art. XI, § 5 of the Texas Constitution.

## COUNT 9

73.    The Plaintiffs reallege paragraphs 1 through 38.

74.    The definition of recyclable material as used in the ordinance is left to the absolute discretion of the City's director of sanitation.

75.    The due course of law provision of the Texas Constitution, art. I, § 19, prohibits such delegation of a City's legislative powers to a City employee.

76.    Because the ordinance violates the due course of law clause it is void and unenforceable.

## COUNT 10

77.    The Plaintiffs reallege paragraphs 1 through 38.

78.    This claim is brought by the Plaintiffs who own or operate MRFs inside and outside of the city limits of Dallas that process recyclable materials generated within the City ("MRF Plaintiffs").

79.    The processing of recyclable materials generated within the city limits of the City is a relevant market. The processing of recyclable materials is a separate product market as compared to municipal solid waste, and recycling facilities are regulated differently from solid waste facilities. Texas law does not require a municipal

solid waste permit for recycling facilities.  Moreover, the City is a separate geographic market for purposes of recyclable materials in this case.  The ordinance at issue addresses only disposal options for entities that generate municipal solid waste and recyclable material within the City, and thus, defines the competitive options for processing the waste and recyclable materials generated within the city limits.

80.     The effect of the ordinance is to create a monopoly for the market in processing recyclable materials generated within the City, by effectively requiring the delivery of all such materials to the McCommas Bluff Landfill, to the exclusion of the MRF Plaintiffs' facilities and any other facilities that process recyclable materials.

81.     There is no clearly expressed state statute or policy that authorizes a municipality to create a monopoly over the processing of recyclable materials generated within its jurisdiction.

82.     To the contrary, recyclable materials are treated separately and are not part of any anticompetitive authority that the State may have delegated to municipalities with respect to solid waste.  Other provisions of state law exclude recyclable materials from the definition of solid waste and remove the collection and processing of such materials from any municipal power to engage in anticompetitive conduct.

83.     Far from expressing a State policy in favor of municipal monopolization of recyclable materials, these and other provisions of state law expressly recognize the role of private recycling facilities in advancing the state policy of increasing the amount of recycling.  As it relates to the ordinance's practical effect of compelling market

participants to dispose of recyclable materials at City-owned facilities, the City has acted outside any express delegation of authority from the State.

84.     In the alternative, the ordinance's requirement that all loads of recyclable materials that contain even a minimal amount of solid waste must go to the McCommas Bluff Landfill on pain of criminal penalty, is an unreasonable exercise of any state delegation of authority with respect to municipal solid waste.  State law recognizes that recyclable materials may contain incidental amounts of solid waste.  Moreover, the practical effect of requiring that any recyclable materials that contain even incidental amounts of solid waste must be disposed of in the City's landfill is contrary to the state policy to promote the increased use of recycling.  For these reasons, the Ordinance's treatment of recyclable materials constitutes an unreasonable exercise of any authority that the State delegated to municipalities with respect to solid waste.

85.     The City's attempted monopolization of the market for processing recyclable materials generated within the City violates the Sherman Act, 15 U.S.C. § 2.

<u>COUNT 11 – ATTORNEYS' FEES</u>

86.     Plaintiffs reallege paragraphs 1 through 85.

87.     Pursuant to 42 U.S.C. § 1988 the Plaintiffs are entitled to and request judgment against the City for Plaintiffs' reasonable attorneys' fees incurred in bringing this action.

<u>PRELIMINARY INJUNCTIVE RELIEF</u>

88.     Plaintiffs reallege paragraphs 1 through 85.

89.     There is a substantial likelihood the Plaintiffs will succeed on the merits of their claims.

90.     The relief sought is essential to prevent interference with the constitutional and statutory rights of the Association's members and of the other Plaintiffs.  Unless the relief sought is granted, the members of the Association, the Franchisees, the Owners/Operators, and the Generators will suffer irreparable injury in that they will be forced to comply with an ordinance that is unconstitutional and is otherwise illegal by significantly changing their conduct of solid waste and recycling activities or face criminal fines and penalties including loss of a vested right – a franchise.

91.     The Plaintiffs' injury outweighs any harm that will result if a preliminary injunction is granted as there will be no such harm.

92.     Granting a preliminary injunction will not disserve the public interest.

93.     Granting the relief requested maintains the status quo.

<u>PRAYER</u>

WHEREFORE, PREMISES CONSIDERED, the Plaintiffs pray that the City be cited to appear and answer and after appropriate proceedings the Court order the following relief:

(a)     find and declare that the ordinance is not an exercise of the City's police powers, exceeds the City's police powers or is not necessary or reasonable to achieve a public concern that is important and legitimate and as such violates the due process and impairment of

contracts provisions of the federal constitution and the due course of law and impairment of contracts provisions of the Texas Constitution, and is void;

(b)     find and declare that the ordinance is unconstitutionally vague and is void;

(c)     find and declare the ordinance is inconsistent with Texas statutes and is void;

(d)     find and declare the application of the ordinance depends on an unconstitutional delegation of the City's legislative powers and is void;

(e)     find and declare the ordinance is unenforceable until there has been notice and an appropriate hearing that results in a final non-appealable order amending the franchise agreements consistent with the ordinance;

(f)     find and declare that the ordinance violates the Sherman Act's anti-monopolization provision with respect to its treatment of recyclable materials;

(g)     preliminarily and permanently enjoin the City from enforcing the ordinance;

(h)     award the Plaintiffs' their attorneys' fees necessarily and reasonably incurred in bringing this action;

(i)     find and declare that the ordinance violates the Sherman Act's anti-monopolization provision with respect to its treatment of recyclable materials;

(j)     award the Plaintiffs their costs of court; and

(k)     provide for such other and further relief at law and in equity to which the Plaintiffs may be justly entitled.

<u>JURY DEMAND</u>

The Plaintiffs hereby request a trial by jury of issues raised by this Complaint that are triable to a jury.

Respectfully submitted,

THOMPSON & KNIGHT LLP


By: <u>/s/ James B. Harris</u>
    James B. Harris
    State Bar No. 09065400

    Stephen F. Fink
    State Bar No. 07013500

    1722 Routh Street, Suite 1500
    Dallas, Texas 75201
    (214) 969-1700 TELEPHONE NO.
    (214) 969-1751 FAX NO.
    Email: james.harris@tklaw.com

    ATTORNEYS FOR NATIONAL SOLID
    WASTES MANAGEMENT ASSOCIATION,
    BLUEBONNET WASTE CONTROL, INC., IESI
    TX CORPORATION, and BUSINESSES
    AGAINST FLOW CONTROL

**COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF –– Page 27**

BAKER BOTTS L.L.P.

By: /s/Ryan Bangert (by permission)
    Aaron M. Streett (application for admission pending)
    State Bar No. 24037561

    910 Louisiana Street
    Houston, Texas 77002
    (713) 229-1855 TELEPHONE NO.
    (713) 229-7855 FAX NO.

    Ryan Bangert
    State Bar No. 24045446

    2001 Ross Avenue
    Dallas, Texas 75201
    (214) 953-6915 TELEPHONE NO.
    (214) 661-4915 FAX NO.

    ATTORNEYS FOR WASTE MANAGEMENT OF TEXAS, INC., and WM RECYCLE AMERICA, LLC

    JACKSON WALKER L.L.P.

By: Charles L. Babcock (by permission)
    Charles L. "Chip" Babcock
    Texas State Bar No. 01479500

    Patrick R. Cowlishaw
    Texas State Bar No. 04932700

    901 Main Street, Suite 6000
    Dallas, Texas 75202
    (214) 953-6000 TELEPHONE NO.
    (214) 953-5822 FAX NO.
    Email: pcowlishaw @jw.com

    ATTORNEYS FOR REPUBLIC WASTE SERVICES OF TEXAS, LTD., ALLIED WASTE SYSTEMS, INC., and CAMELOT LANDFILL TX, LP.